IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Wade Stephney Jr., ) | |
| ) | C.A. No. 4:08-3449-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Michael J. Astrue, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

On October 8, 2008, Plaintiff Wade Stephney Jr., appearing *pro se*, filed the within action pursuant to 42 U.S.C. §§ 408, 1982, and 1983 alleging that the Social Security Administration (SSA) improperly suspended his Social Security retirement insurance benefits (RIB) and Supplemental Security Income (SSI) payments. Plaintiff specifically avers that his payments were terminated prior to his conviction of a crime and that he was not given notice and a hearing prior to the termination of his payments, in violation of his due process rights. Plaintiff seeks reimbursement of his RIB and SSI payments for the period of April 2008 through September 2008 and a judgment of $50,000.00 for pain and suffering.

On March 26, 2009, Defendant filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court issued an order on March 26, 2009, advising Petitioner of the summary judgment procedure and the possible consequences if he failed to respond adequately. On April 9, 2009, Petitioner responded to this motion.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to the United States Magistrate Judge Bruce Howe Hendricks for pretrial handling. On November 4, 2009, the Magistrate Judge filed a Report and Recommendation recommending that

Respondents' motion for summary judgment be granted. On November 13, 2009, Plaintiff filed objections to the Report and Recommendation. On November 30, 2009, Defendant replied. On December 30, 2009, Plaintiff filed an additional document in support of his objections.

## FACTS

On March 27, 2008, Plaintiff filed applications for RIB and SSI benefits. Entry 24-4,5. In these applications, Plaintiff indicated that he was accused or convicted of a felony or an attempt to commit a felony, but did not have any outstanding felony warrants for his arrest. Entry 24-5. Plaintiff also indicated in his applications that he was not on parole or probation. Entry 24-4,5. Plaintiff was provided with copies of his applications and confirmed that the information contained therein was correct. Moore Decl. ¶ 4. Plaintiff became entitled to RIB beginning in March 2008. Entry 24-6. Plaintiff became eligible to receive SSI payments beginning on May 1, 2008. Entry 24-7.

On June 26, 2008, the SSA received information that Plaintiff was incarcerated on March 1, 2007. Entry 24-8. Based upon this information, the SSA issued a letter to Plaintiff, dated July 5, 2008 informing Plaintiff that individuals imprisoned for the conviction of a crime are prohibited from receiving Social Security benefit payments. Entry 24-10. Therefore, he was not entitled to RIB payments effective March 2008. Moore Decl. ¶ 7, Entry 24-10. The letter informed Plaintiff that his payments were stopped in July 2008 and that payments from March 2008 to June 2008 were overpayments that had to be returned to the SSA. Entry 24-10. The letter indicated that Plaintiff had 60 days to request reconsideration of this decision. *Id.* The SSA subsequently discovered that Plaintiff was released from incarceration on February 29, 2008. Moore Decl. ¶ 6.

2

On August 1, 2008, the SSA received information that Plaintiff had an outstanding warrant for his arrest, which was issued by the Horry County Police Department in Conway, South Carolina on July 28, 2008 ("Horry County warrant"). Entry 24-11. On September 1, 2008, the SSA received information that Plaintiff had an outstanding felony warrant for his arrest based on a probation or parole violation, which was issued in Indian River County, South Vero Beach, Florida on July 10, 2001 ("Indian River warrant"). Entry 24-12.

The SSA verified that the Horry County warrant was still active on October 1, 2008. Entry 24- 11. On October 20, 2008, the SSA issued Plaintiff a letter to notify him that the SSA intended to stop his RIB payments effective July, 28, 2008 because of the outstanding Horry County warrant. Entry 24-15. The letter informed Plaintiff that he had 30 days to respond before his RIB would be terminated. *Id.* Plaintiff was also informed that at the expiration of 30 days, Defendant would send another letter providing Plaintiff with 60 days to appeal a decision to stop his benefits. *Id.* Defendant has, however, admitted that the follow-up letter was not sent. Moore Decl. ¶ 12. On October 22, 2008, the SSA issued Plaintiff a letter to notify him that his SSI payments had been terminated effective July 2008 because of the outstanding Horry County warrant. Entry 24-17. Plaintiff was informed that he would not receive a payment in November 2008 and that the payments issued from July 2008 to October 2008 were overpayments that had to be returned. *Id.* Plaintiff was given 60 days total to appeal, but was informed that if he appealed within 10 days, he would continue to receive payments until his case was decided. *Id.*

The SSA verified that the Indian River warrant was still active on November 1, 2008. Entry 24- 12. On November 17, 2008 the SSA issued Plaintiff a letter to notify him that the SSA intended to stop his RIB payments effective March 2008 because of the Indian River warrant.

3

Entry 24-16. The letter gave Plaintiff 30 days to respond before his RIB payments would be terminated. *Id.* The letter explained that individuals who have outstanding arrest warrants for felonies or who have violated a condition of probation or parole are prohibited from receiving Social Security benefit payments. *Id.* Plaintiff was also informed that at the expiration of 30 days, Defendant would send another letter providing Plaintiff with 60 days to appeal a decision to stop his benefits. *Id.* Defendant has, however, admitted that the follow-up letter was not sent. Moore Decl. ¶ 12. On November 21, 2008, the SSA issued Plaintiff a letter to notify him that he should not have received SSI payments for April 2008 and from May 1, 2008 to June 30, 2008 because he had an outstanding arrest warrant. Entry 24-18. Plaintiff was informed that he had 60 days to appeal and request a hearing. *Id.*

On April 9, 2009, SSA issued Plaintiff a letter to inform him that he had 60 days to appeal SSA's decision to stop his RIB payments due to his incarceration. Entry 36-7. The letter encouraged Plaintiff to contact SSA when he is released from incarceration so they can review his case. Also on April 9, 2009, SSA issued Plaintiff a letter to notify him that he had 60 days to appeal the decision to stop his RIB payments effective March 2008 because of the Horry County warrant. Entry 36-7. At or around the issuance of this letter, SSA learned that the Horry County Warrant was dismissed. On April 13, 2009, SSA issued Plaintiff a letter to notify him that he had 60 days to appeal the decision to stop his RIB payments effective March 2008 because of the Indian River warrant. Entry 36-8. These letters were sent to remedy SSA's previous failure to follow-up on the October 20, 2009 and November 17, 2009 notification letters.

As of November 25, 2009, SSA records do not indicate that Plaintiff ever filed an appeal with SSA. Davis Decl. ¶ 7. Defendant now concedes that Plaintiff's 2001 and 2008 warrants

were for non-felony offenses. Defendant's Reply at 4. SSA records indicate that Plaintiff's benefits are currently suspended because Plaintiff is incarcerated. Davis Decl. ¶ 9.

## DISCUSSION

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight and the responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination on any portions of the Report and Recommendation to which a specific objection is made. *Id.* The district court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. *Orpiano v. Johnson*, 687 F.2d 44, 47-48 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge. 28 U.S.C. § 636(b)(1).

**I. Claims for Social Security Benefits**

The Magistrate Judge recommended that Plaintiff's claims for Social Security benefits be dismissed without prejudice because Plaintiff failed to exhaust his administrative remedies. Plaintiff states in his objections that: "[i]t is disputed that the pro se plaintiff was denied due process and equal protection of the law under the 14th Amend. The Social Security Administration Defendants did den[y] the pro se plaintiff a[n] administrative hearing before the suspension of suspended. . . ." Entry 33, II. Because Plaintiff never sought a post-termination hearing of the SSA's decisions, the court interprets Plaintiff's objection as a claim that Plaintiff has been denied due process by having his SSI and RIB benefits terminated without a pre-termination hearing.

Ordinarily, exhaustion of administrative remedies is required before a claimant can seek judicial review. *Hyatt v. Heckler*, 757 F.2d 1455, 1460 (4th Cir. 1985) (citing 42 U.S.C. § 405(g)). However, there is an exception to this requirement when "a claimant has presented to the Secretary a claim that raises a legal issue wholly collateral to a claim for benefits and who has made a colorable showing that his injury cannot be remedied if exhaustion is required." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 326-32,(1976)). A plaintiff seeking a pre-termination hearing is not required to exhaust his administrative remedies. *See Eldridge*, 424 U.S. at 328-30.

A. Procedural Due Process Claim

The due process clause of the Fifth Amendment imposes procedural requirements on "governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Eldridge*, 424 U.S. at 332. Procedural due process is applicable to the termination of Social Security benefits because an individual has a "statutorily created 'property' interest" in the continued receipt of such benefits. *Id.* Once a life, liberty or property interest is identified, the process due an individual in a given context is determined through the analysis of three factors: 1) "the private interest that will be affected by the official action"; 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-guards"; and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Two cases guide the court's determination. First, in *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Supreme Court established a right to a hearing prior to termination of welfare benefits. Second, and by way of contrast, in *Eldridge*, the Supreme Court held that a hearing is

6

not required prior to the termination of Social Security disability insurance benefits. 424 U.S. at 349.

        1.    *Private Interest*

The court must first determine the strength of Plaintiff's private interest in a pre-termination hearing. The *Goldberg* court determined that a recipient of welfare benefits has a strong private interest in a pre-termination hearing because the termination of welfare benefits was likely to deprive an eligible recipient of the means to live. 397 U.S. at 266-71. The *Eldridge* court, however, determined that a recipient of Social Security disability insurance benefits has a lesser interest in a pre-termination hearing because: 1) the receipt of disability benefits is unrelated to the recipient's income, and 2) other forms of government assistance were available to a claimant should the termination of disability payments result in their income dropping below the subsistence level. 424 U.S. at 340-43.

Eligibility for RIB benefits, like disability benefits is unrelated to a recipient's income. Eligibility for SSI benefits, on the other hand, is partially needs-based giving rise to a stronger private interest than the private interest in RIB or disability benefits. Recipients of SSI and RIB have other potential sources of assistance, including welfare, available if their benefits are terminated. Based upon the forgoing, the court finds that 1) a RIB recipient's private interest in a pre-termination hearing is substantially equivalent to the private interest of a recipient of disability benefits, and 2) a recipient of SSI has a slightly greater private interest in a pre-termination hearing, but a lesser interest than a recipient of welfare benefits.

        2.    *Risk of Erroneous Deprivation*

Next, the court must determine the level of risk of erroneous deprivation without the

provision of a pre-termination hearing. The type of evidence supporting the termination of benefits is the crucial consideration in determining the risk of erroneous deprivation without a pre-termination hearing. For example, in the context of disability benefits, the *Eldridge* court concluded that determinations could be made upon a written record because termination decisions are based solely upon medical evidence, which can effectively be presented in medial records. 424 U.S. at 344 n. 28. The *Eldridge* court distinguished the right to a pre-termination hearing announced in *Goldberg* on the ground that written submissions were not a sufficient basis for making a determination in the context of welfare benefits because entitlement to welfare benefits involves an inquiry involving issues of witness credibility and veracity. 424 U.S. at 344.

The evidence relating to the termination of Plaintiff's RIB and SSI benefits is that Plaintiff had outstanding warrants for his arrest and was incarcerated. This evidence does not involve questions of credibility or veracity. Whether a claimant is presently incarcerated or has outstanding arrest warrants for felonies generally can be determined upon a written record. The court thus finds that the risk of erroneous deprivation of benefits is de minimus in this case.

        3.     *Governmental Interest*

Finally, the court must determine the governmental interest in streamlining administrative decisions. The costs and administrative burden are the main elements of this due process consideration. *Hudsinus v. Heckler*, 587 F.Supp. 814, 821 (D.N.J. 1984). Generally speaking, the benefit of some additional safeguards against erroneous deprivation can be outweighed by their cost to tax payers. *See id.* If the SSA were required to hold an evidentiary hearing prior to the termination of RIB and SSI benefits every time it receives a report that a recipient has an

outstanding warrant for his arrest or has been incarcerated, the administrative costs would likely be substantial. The court concludes that the Government interest in terminating SSI and RIB benefits in this case without being required to provide a pre-termination hearing is not insubstantial.

The court concludes that the private interest in continued receipt of SSI and RIB benefits and the risk of erroneous deprivation are not so substantial as to require a pre-termination hearing in all cases. The court finds that, for the purposes of due process, Plaintiff's interest is sufficiently protected by the opportunity to appeal SSA's decisions.

B.  Remainder of Claims for Social Security Benefits

With regard to the remainder of Plaintiff's claims for Social Security benefits, the court finds that it does not have jurisdiction to adjudicate these claims because Plaintiff has not exhausted his administrative remedies as is required. *See Latham v. Bowen*, No. 88-3966, 1989 WL 5444, at *1 (4th Cir. January 13, 1989). With regard to Plaintiff's SSI payments, Plaintiff never appealed SSA's suspension decision. With regard to Plaintiff's RIB payments, Plaintiff failed to request reconsideration of SSA's initial termination of his benefits within 60 days as required by the July 5, 2008 letter. In addition, Plaintiff failed to respond to either the October 20, 2008 or the November 17, 2008 letters indicating that Plaintiff's RIB would be suspended based upon his outstanding warrants if Plaintiff did not respond within 30 days. In addition, as of November 25, 2009, Plaintiff had not appealed these decisions. Had Plaintiff requested reconsideration or replied to any of these letters, SSA would have had the opportunity to remedy any errors at a much earlier date. Indeed, the very purpose of the exhaustion requirement is to allow administrative agencies the opportunity to remedy their own mistakes and the court may

not ignore this requirement.

**II. Claims for Money Damages**

With regard to Plaintiff's claims for money damages, the Magistrate Judge concluded: 1) to the extent Plaintiff's money damages claim is a claim pursuant to the Federal Tort Claims Act, this claim should be dismissed without prejudice because Plaintiff failed to exhaust his administrative remedies, and 2) to the extent Plaintiff's money damages claim is an action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the claim should be dismissed with prejudice because there is no *Bivens* action for alleged due process violations in denying Social Security benefits.  Plaintiff objects to such a dismissal stating: "[t]he pro se plaintiff, also seeks, [sic] and pled claims for monetary damages, general damages, punitive damages, for the illegal suspensions of the pro se plaintiff's Social Security [RIB] and [SSI] benefits claims. . . . Accordingly, pro se plaintiff's claims should not be dismissed. . . ."  Entry 33, II.

Plaintiff's objection also fails to direct the court's attention to a specific error in the Magistrate Judge's proposed findings and recommendations.  Nevertheless, the court has conducted a *de novo* review of the issue and concludes that the Magistrate Judge has properly applied the applicable law.   Plaintiff has provided the court with no evidence that he has exhausted his administrative remedies for a Federal Tort Claims Act case, as is required.  *See* 28 U.S.C. § 2675(a); *Plyer v. United States*, 900 F.2d 41, 42 (4th Cir. 1990).  Furthermore, to the extent Plaintiff alleges a *Bivens* claim, there is no such cause of action for alleged due process violations in denying Social Security benefits.  *See Schweiker v. Chilicky*, 487 U.S. 412, 424-25 (1988); *see also Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 409 (4th Cir. 2003).

## CONCLUSION

Based upon the foregoing, the court adopts and incorporates herein by reference the Report and Recommendation of the Magistrate Judge. The court **grants** Respondents' motion to dismiss (Entry 24). Plaintiff's claims for benefits pursuant to 20 U.S.C. § 408 are dismissed **without prejudice**. To the extent Plaintiff alleges claims under the Federal Tort Claims Act, these claims are dismissed **without prejudice**. To the extent Plaintiff alleges *Bivens* claims, these claims are dismissed **with prejudice**. This case is recommitted to the Magistrate Judge for further pretrial handling regarding Defendant's outstanding counterclaim.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour<br>
The Honorable Margaret B. Seymour<br>
United States District Judge

February 2, 2010
Columbia, South Carolina